**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **JONATHAN WASHINGTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cv-82-CWB** |
| | ) | |
| **FRANK BISIGNANO,[1]** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.      Introduction and Administrative Proceedings**

Jonathan Washington ("Plaintiff") filed an application for Supplemental Security Income

under Title XVI of the Social Security Act on December 10, 2020—initially alleging disability

onset as of March 21, 2015, which was later amended to December 10, 2020—due to blood cancer,

high blood pressure, blood clots, stroke, torn ACL, and lupus.  (Tr. 18, 1122-23).[2]  Plaintiff's

claims were denied at the initial level on April 1, 2022 and after reconsideration on May 25, 2023.

(Tr. 18, 1122, 1129, 1135-36, 1143, 1151).  Plaintiff then requested *de novo* review by an

administrative law judge ("ALJ").  (Tr. 18, 1154, 1171).  The ALJ subsequently heard the case on

November 14, 2023, at which time live testimony was given by Plaintiff and by a vocational expert.

(Tr. 18, 1079-1098).  The ALJ took the matter under advisement and issued a written decision on

February 13, 2024 that found Plaintiff not disabled prior to July 23, 2023 but disabled beginning

on that date and continuing through the date of the decision.  (Tr. 18-27).

---

[1]  Frank Bisignano became Commissioner for the Social Security Administration on or about
May 7, 2025 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]  References to pages in the transcript are denoted by the abbreviation "Tr."

The ALJ's written decision contained the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since the date of application, December 10, 2020 (20 CFR 416.971 *et seq.*).

2. Since the date of application, December 10, 2020, the claimant has had the following severe impairments: obesity, diabetes mellitus Type 2, thrombocythemia/thrombocytosis, hypertension, status post cerebrovascular accident (CVA), history of deep vein thrombosis, left ventricular systolic dysfunction, and grade 1 diastolic dysfunction (20 CFR 416.920(c)).

3. Since December 10, 2020, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that since December 10, 2020, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can never push/pull with the left lower extremity, and can never climb ladders, ropes, and scaffolds, or work at unprotected heights or with hazardous machinery. He can occasionally climb ramps and stairs, as well as frequently balance, stoop, crouch, and crawl, and is limited to occasional kneeling. He must avoid concentrated exposure [to] extreme cold, extreme heat, and vibration.

5. The claimant has no past relevant work (20 CFR 416.965).

6. Prior to the established disability onset date, the claimant was a younger individual age 45-49. Applying the age categories non-mechanically, and considering the additional adversities in this case, on July 23, 2023, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).

9. Prior to July 23, 2023, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 416.969 and 416.969a).

10. Beginning on July 23, 2023, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual

functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 416.960(c) and 416.966).

11. The claimant was not disabled prior to July 23, 2023, but became disabled on that date and has continued to be disabled through the date of this decision. His disability is expected to last twelve months past the onset date (20 CFR 416.920(g)).

(Tr. 20, 21, 25, 26).

On December 13, 2024, the Appeals Council issued a partially favorable decision finding that Plaintiff had been under a disability since February 13, 2024 but not prior to that date (Tr. 1-14), thereby rendering the decision the final decision of the Commissioner. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The Appeals Council's written decision contained the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since December 10, 2020 (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: obesity, diabetes mellitus Type 2, thrombocythemia/thrombocytosis, hypertension, status post cerebrovascular accident (CVA), history of deep vein thrombosis, left ventricular systolic dysfunction, and grade 1 diastolic dysfunction, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(c), 416.920(d), 416.925 and 416.926).

3. The claimant's combination of impairments results in the following limitations on his ability to perform work-related activities: limited to less than the full range of sedentary work, except he can never push/pull with the left lower extremity, and can never climb ladders, ropes, and scaffolds, or work at unprotected heights or with hazardous machinery. He can occasionally climb ramps and stairs, as well as frequently balance, stoop, crouch, and crawl, and are limited to occasional kneeling. The claimant must avoid concentrated exposure [to] extreme cold, extreme heat, and vibration. In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the sedentary exertional level.

4. The claimant's alleged symptoms are not fully consistent with and supported by the evidence of record for the reasons contained in the body of this decision.

5.  The claimant has no past relevant work (20 CFR 416.963).

6.  Prior to February 13, 2024, the claimant was under age 50, which was considered to be a younger individual.  As of February 13, 2024, the claimant is considered to be an individual closely approaching advanced age (20 CFR 416.963).

7.  The claimant has a high school education (20 CFR 416.964).

8.  Based on the claimant's age, education and work experience, if the claimant had the capacity to perform the full range of the sedentary exertional level, 20 CFR 416.969 and Rule 201.21 in Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled before February 12, 2024. Although the claimant's exertional and nonexertional limitations do not allow him to perform the full range of the sedentary exertional level, using the above-cited Rule as a framework for decisionmaking, there are a significant number of jobs in the national economy, which he could perform. These jobs include folder (D.O.T. # 685.687-014) with 50,000 jobs in the national economy and label cutter (D.O.T. # 585.685-062) with 38,000 jobs in the national economy (20 CFR 416.969 and 416.969a).

    As of February 13, 2024, based on a change in age category, Rule 201.12 directs a finding that the claimant is disabled (20 CFR 416.920(g)).

9.  The claimant has been disabled as defined in the Social Security Act since February 13, 2024, but not before that date.

(Tr.10-11).

On appeal, Plaintiff asks the court to reverse the final decision and to remand for an award of benefits or, alternatively, for a new hearing and further consideration.  (Doc. 13 at p. 15). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of jurisdiction by a Magistrate Judge (Docs. 4 & 5), and the court finds the case ripe for review pursuant to 42 U.S.C. § 405(g) in that Plaintiff's supporting brief (Doc. 13) is construed as a motion for summary judgment and the Commissioner's opposition brief (Doc. 19) is construed as a competing motion for summary judgment. Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be granted, that

4

the Commissioner's motion for summary judgment is due to be denied, and that the final decision is due to be reversed and remanded.

## II.     Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted simply because the court itself would have reached a different result.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process:

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]  *See also* See 20 C.F.R. § 404.1520.

---

[3]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[4]  "[T]he law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits*." Patterson v. Bowen*, 799 F.2d 1455, 1456 (11th Cir. 1986).  Therefore, cases arising under Title II are appropriately cited as authority in Title XVI cases, and vice versa.  *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income."); *Claudia S. v. Saul*, No. 1:18-CV-01896, 2019 WL 3059745, *1 (N.D. Ga. July 12, 2019) ("[T]o the extent that the Court cites to DIB cases, statutes, or regulations, they are equally applicable to Plaintiff's SSI claims, and vice versa.").

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

### III.    Issues on Appeal

Plaintiff raises three core issues on appeal: (1) whether the Appeals Council failed to properly consider evidence submitted after the ALJ's decision; (2) whether the ALJ failed to properly evaluate the listings at step three; and (3) whether the ALJ failed to properly consider Plaintiff's subjective complaints and the medical opinion of Brandon Johnson, M.D.

## IV.   Discussion

Plaintiff argues that the Appeals Council did not properly consider the additional evidence, consisting of over 1,000 pages of medical records, that Plaintiff submitted.  (Doc. 13 at p. 8; Doc. 20 at p. 2, citing Tr. 65-1078).  Specifically, Plaintiff asserts that those records support a finding that he meets or equals Listing 4.02 and that the ALJ did not have access to the records at the time of the decision.  (Doc. 20 at p. 3; Doc. 13 at pp. 10-12).  The Commissioner contends that both the ALJ and the Appeals Council considered the evidence and reasonably concluded that Plaintiff did not meet or equal a listing.  (Doc. 19 at p. 7).

The court "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits."  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007).  Evidence is properly presented if the evidence is "new [and] material" and if it "relates to the period on or before the date of the hearing decision."  *See* 20 C.F.R. § 416.1470(a)(5); *Russell v. Astrue*, 742 F. Supp. 1355, 1382 (N.D. Ga. 2010) (citing *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-02 (11th Cir. 2008)); *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) ("[T]he Appeals Council 'must consider new, material, and chronologically relevant evidence' that the claimant submits.").  The Appeals Council must review a case if properly presented new evidence shows that "there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 416.1470(a)(5).[5] However, if the Appeals Council denies a request for review, it is "not required to provide a detailed discussion of the new evidence or an explanation as to why the claimant's new evidence

---

[5]  In addition, the claimant must show "good cause" for not submitting the evidence to the ALJ. 20 C.F.R. § 416.1470(b).

would not change the ALJ's decision." *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 863 (11th Cir. 2019) (citing *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771, F.3d 780, 784-85 (11th Cir. 2014)). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. A court considers that evidence with the whole record to determine whether substantial evidence supports the ALJ's decision. *Id*. at 1266-67.

The administrative record makes clear that the Appeals Council accepted the additional evidence submitted by Plaintiff but found that the additional evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision. (Tr. 8). Specifically, the Appeals Council stated that it agreed with the ALJ's step three finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 9, 19, 21). At step three of the sequential evaluation process, the ALJ's discussion of findings consisted of the following statement: "As discussed herein, the medical evidence does not contain the objective signs, symptoms or findings, or degree of functional limitations, necessary for the claimant's physical impairments, considered singly or in combination, to meet or equal the severity of any section contained in Appendix 1." (Tr. 21).

In discussing the medical record, the ALJ noted the following:

The medical evidence of record confirms a history of treatment with Mercy Medical Clinic (B7F-B8F, B10F, B14F). Records show consistent treatment for essential thrombocythemia and the claimant compliant with hypertensive prescription medications (B8F/7). Follow up in March 2022 showed some swelling in the left leg but dizziness and shortness of breath at baseline. He reported occasional brain fog and slurred speech. However, the hypertensive disorder was well-controlled and the essential thrombocythemia showed no change in symptoms or abnormal bleeding (B10F/8). Follow up on September 28, 2022, indicates ejection fraction was improved (B14F/9). During post hospitalization follow up on October 24, 2022, the claimant expressed that he was feeling really good since discharge and

9

felt like his heart would improve. He denied chest pain and abnormal heartbeats. Notes indicate the claimant inquired about when he could drive again (B14F/5).

The medical evidence of record confirms treatment with The Heart Center for chest pressure, dyspnea on exertion, and fatigue (B11F/B17F). An echocardiogram performed April 1, 2022, revealed mild mitral regurgitation, mild aortic stenosis, and ejection fraction of 45% (B11F/21). On October 14, 2022, the claimant underwent several cardiovascular procedures, to include catheterization and stenting. He was also found to have profound left ventricular dysfunction (B11F/28-29). Thereafter, a transthoracic echocardiography report revealed ejection fraction estimated at 25-30% with severe hypokinesis and Grade 1 diastolic dysfunction (B11F/45). However, subsequent follow up shows good symptom management and control with medication and treatment compliance. Although the claimant continued to be on a life vest, progress notes from January 11, 2023, shows the claimant "doing actually pretty well." Notes indicate no shocks from the defibrillator, mild dyspnea with exertion, and only slight peripheral edema but not much (B17F/32). Additionally, during follow up on March 14, 2023, the claimant denied chest pain, palpitations, nausea, vomiting, or diaphoresis and not experiencing progressing dyspnea on exertion or lower extremity edema. Notes further indicate that he had completed a course with cardiac rehabilitation and was exercising regularly (B17F/36). An echocardiogram conducted March 15, 2023, revealed a mildly dilated left atrium and mild mitral regurgitation (B17F/40).

On December 21, 2022, Dr. Brandon Johnson completed a statement detailing the claimant's treatment history. He described the claimant in general as very tired. Dr. Johnson determined that because of the claimant's history of strokes, as well as severe heart failure, coronary artery disease, and myeloproliferative, he is simply not able to work. Dr. Johnson indicated that the claimant is at risk for cardiac decompensation at any point and any exertion could promote another potentially fatal arrhythmia (B16F).

Turning to the claimant's obesity, most current progress notes document that the claimant has a body mass index (BMI) of 30.4 (B17F/34) and is classified as Level I obesity (SSR 19-2p). As indicated in SSR 19-02p, obesity may have an adverse impact upon co-existing impairments. The claimant's obesity has been considered as required in this decision. In the present case the claimant's obesity is not such as to prevent lifting, carrying, ambulation, reaching, orthopedic and postural maneuvers, or to prevent him from working or being able to complete a fairly full range of activities of daily living. Therefore, the claimant's obesity cannot, either by itself, or in conjunction with the claimant's other impairments, be considered to be disabling. Nevertheless, allowance has been made for this condition in determining the claimant's functional capacity insofar as proscribing some exertionally demanding activities such as climbing ladders, ropes, or scaffolding or prohibition against exposure to workplace hazards to which the claimant may be more susceptible.

(Tr. 23-24).

As to the opinion evidence, the ALJ stated:

The State agency medical consultants who reviewed the evidence at the initial and reconsideration stages of adjudication determined the claimant could perform work-related duties (B4A-B5A). These opinions are afforded partial weight. The undersigned finds that the record supports a more limiting residual functional capacity of sedentary work physical impairment and symptoms. However, these symptoms are not disabling as alleged by the claimant. It should be further noted that no physician has placed greater restrictions on the claimant than those adopted herein.

(Tr. 24).

Plaintiff contends that the ALJ's decision only contained one sentence of boiler plate language regarding the conclusion that Plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of a listed impairment and that there was no further analysis at step three—as the rest of the ALJ's decision merely contained a summary of the medical history without any analysis as to how the listings were not met. (Doc. 13 at p. 10; Doc. 20 at p. 6). Plaintiff asserts that the Appeals Council merely adopted this finding without further explanation or analysis. (*Id.*).

If at step two of the sequential evaluation process an ALJ finds that a claimant has an impairment or combination of impairments that is "severe," then at step three the ALJ must determine whether that impairment or combination of impairments meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and meets the duration requirement. *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015); 20 C.F.R. § 416.920(a)(4)(ii)-(iii). A claimant bears the burden of proving that his or her impairments meet or equal a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). "The burden to meet a listed impairment is heavy, but one the plaintiff must bear in order to receive an automatic finding of disability under 20 C.F.R. §§ 404.1520(d), 416.920(d)."

*Nettles v. Astrue*, No. 3:09-CV-862, 2010 WL 3394666, *7 (M.D. Fla. Aug. 26, 2010). "The evidentiary standards for presumptive disability under the listings are stricter than for cases that proceed to other steps in the sequential evaluation process because the listings represent an automatic screening based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim." *Nolen v. Colvin*, No. 6:14-CV-01306, 2015 WL 4617236, *3 (N.D. Ala. July 31, 2015); *Stanton v. Astrue*, 617 F. Supp. 2d 1205, 1215 (M.D. Fla. 2008).

An ALJ is not required to make detailed findings or explicitly discuss why a plaintiff did not actually meet a listing as long as substantial evidence supports the ALJ's conclusion that the plaintiff's impairment did not meet a listing. *See Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 841-42 (11th Cir. 2019) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) ("While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing.")). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (internal citation omitted); *see* 20 C.F.R. §§ 416.925(a)-(d), 416.926(a).[6] The duration requirement

---

[6] According to 20 § 416.926(b), medical equivalence can be found in three ways:

(1)(i) If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but—

(A) You do not exhibit one or more of the findings specified in the particular listing, or
(B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,

means that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifest only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id*. at 531 (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id*. A claimant who is not currently engaging in substantial gainful activity and who has a severe impairment that meets or equals a listing is entitled to disability benefits, and the sequential evaluation of a claim ends.

---

(ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2) If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3) If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(b).

13

*Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984). "The ALJ's finding as to whether a claimant meets a listed impairment may be implied from the record. Furthermore, while the ALJ must consider the Listings in making its disability determination, 'it is not required that the [ALJ] mechanically recite the evidence leading to [its] determination.'" *Kalishek v. Comm'r of Soc. Sec.*, 470 F. App'x 868, 870 (11th Cir. 2012) (quoting *Hutchison*, 787 F.2d at 1463).

Plaintiff asserts that he met or equaled Listing 4.02 for chronic heart failure as early as October 2022. (Doc. 13 at p. 11). Plaintiff's main argument pertains to meeting or equaling Listing 4.02A(1) and B(3). (Doc. 13 at pp. 11-12; Doc. 20 at pp. 6-9). Listing 4.02 states, in relevant part, as follows:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A. Medically documented presence of one of the following:
>
>> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure) ...
>
>> \*\*\*
>
> AND
>
> B. Resulting in one of the following:
>
>> \*\*\*
>
>> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
>
>>> a. Dyspnea, fatigue, palpitations, or chest discomfort; or
>>> b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute ... .

14

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 4.02A(1), B(3).

In establishing prong A, Plaintiff asserts that the record shows that he has systolic failure with an ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure).  (Doc. 13 at p. 11).  The ALJ found, and the Appeals Council agreed, that Plaintiff's "left ventricular systolic dysfunction" was a severe impairment.  (Tr. 9, 21).  Plaintiff was diagnosed with "[c]ombined systolic and diastolic heart failure."  (Tr. 252-53, 264, 304, 562, 623, 734).  An echocardiogram on March 16, 2023 showed mild left atrial dilation, mild mitral regurgitation, and a left ventricular ejection fraction of 25%.  (Tr. 1076).  On April 24, 2023, Plaintiff had an Automatic Implantable Cardioverter-Defibrillator ("AICD") implanted.  (Tr. 552).  Plaintiff's preoperative diagnoses by John W. Johnson, M.D. was "[c]hronic systolic heart failure, severe left ventricular dysfunction putting this patient at increased risk of sudden cardiac death, cardiac arrest."  (Tr. 552).  A heart catheterization performed on October 14, 2022 revealed Plaintiff's "ejection fraction was markedly reduced at 20%."  (Tr. 1794).  Records show that Plaintiff's EF did not get above 30% (listing level threshold) from October 2022 through 2024. (Tr. 185, 253, 256, 263, 376, 624, 720, 830, 2030).

The Commissioner does not dispute or present anything against Plaintiff's argument that he meets or equals the 4.02 diagnostic criteria of prong A.  Instead, the Commissioner argues that the evidence Plaintiff provided regarding "peak METs" and "PVCs" (or premature ventricular contractions) alone does not indicate that Plaintiff "meets Listing 4.02, B.3."  (Doc. 19 at p. 9). The Commissioner asserts that "Plaintiff assumes without evidence that the necessary connection exists between the 'peak METS' and 'PVCs.'"  (*Id*.).  Plaintiff, however, cites to medical records that the ALJ did not have, but that the Appeals Council did have, and argues that those records show that he established the criteria for prong B.  (Doc. 13 at pp. 11-12; Doc. 20 at pp. 7-8).

15

From November 8, 2022 to February 13, 2023, Plaintiff attended 36 cardiac rehabilitation sessions where medical records regularly showed on his ECGs during exercise that he had "SR-ST w/ST depression and inverted T wave with PVC's." (Tr. 376, 380, 383, 385, 388, 391, 393, 396, 399, 403, 422, 424, 426, 429, 431, 433, 437, 955, 957, 960, 964, 967, 970, 972, 976, 979, 986, 988, 991, 995, 997, 1000, 1003, 1006, 1008, 1010, 1012, 1015, 1018-19). Upon entering cardiac rehabilitation, Plaintiff's "peak METS" were 2.98, and upon completion of cardiac rehabilitation in February 2023 his "peak METS" were 3.49. (Tr. 346). Notes from November 9, 2022 to December 7, 2022 and January 30, 2023 reflect that Plaintiff was instructed to slow down his intensity on machines because of elevated heart rate. (Tr. 356, 376). Records also show that after Plaintiff's AICD was implanted, the event monitor documented "187568" total PVCs from August 04, 2023 to December 6, 2023 and that "Three or More PVCs" occurred 92 times during this period. (Tr. 125). From December 6, 2023 to May 6, 2024, the event monitor documented "430331" total PVCs and that "Three or More PVCs" occurred 1,300 times during this period. (Tr. 125).[7]

Generally, evidence must show that a claimant's impairment has lasted or can be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.925(c)(4). However, some listings may state a specific period of time for which a claimant must meet the listing. *Id*. Thus,

---

[7] The court notes that in situations where a claimant has an implanted cardiac defibrillator the Social Security Administration will not order an exercise test. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 4.00C(8)(a)(iii) ("We will not purchase an exercise test when a[] [Medical Consultant] finds that you have one of the following significant risk factors: ... (iii) An implanted cardiac defibrillator."); *Gunter v. Astrue*, No. 3:09CV0292, 2010 WL 3293567, *10 (S.D. Ohio June 28, 2010), *report and recommendation adopted*, No. 3:09CV0292, 2010 WL 3293356 (S.D. Ohio Aug. 19, 2010) (noting that "Listing 4.00(C)(8)(iii) specifically provides that a claimant with '[a]n implanted cardiac defibrillator' will not be required to perform an exercise test," and that ALJ's finding that "pacemaker implant" was a severe impairment further demonstrated that plaintiff was exempted under the Social Security Administration's own guidelines from being ordered to perform an exercise test).

a 12-month durational requirement does not apply to all listings. Some courts have determined that Listing 4.02B(3) does not include a 12-month durational period or require more than one exercise tolerance test. *See Amos A. C. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-CV-1185, 2019 WL 3024657, *3-4 (D. Or. July 10, 2019). While not making a determination here as to whether the 12-month durational requirement applies to Listing 4.02B(3), the court notes that evidence submitted to the Appeals Council that was not before the ALJ may possibly satisfy the criteria under prong B. The Appeals Council did not specifically address the additional evidence in relation to Listing 4.02 but merely adopted the ALJ's earlier findings. To be sure, courts may infer an implicit finding that a listing is not met or equaled when the decision shows consideration of the pertinent criteria. *See Hutchison*, 787 F.2d at 1463. However, given that the ALJ was not in possession of the additional evidence and the Appeals Council did not address it, the court cannot discern if Listing 4.02 was properly considered. The record simply is bereft of sufficient discussion for meaningful judicial review.

Because there is some indication that Plaintiff's condition may possibly satisfy the prong B criteria—as the record contains evidence that arguably illustrates the elements of the Listing—it is unclear whether substantial evidence supported the ALJ's findings. "While in some cases, the ALJ's analysis of the claimant's RFC might lend support or enable the reviewing court to determine whether a listing was met or equaled without assuming the role of the ALJ as fact finder, this unfortunately, is not such a case." *Martin v. Saul*, No. CV 19-0993, 2021 WL 1235244, *5 (S.D. Ala. Mar. 31, 2021). The responsibility for deciding whether an impairment meets or equals a listed impairment rests with the Commissioner. 20 C.F.R. § 416.927(d). Accordingly, it is appropriate for the case to be remanded for the ALJ to weigh this evidence in determining whether Plaintiff's impairment meets or equals Listing 4.02. *See Chaney*

*v. Bisignano*, No. 7:24-CV-00880, 2025 WL 3280711, *9 (E.D.N.C. Oct. 29, 2025), *report and recommendation adopted*, No. 7:24-CV-880, 2025 WL 3272042 (E.D.N.C. Nov. 24, 2025) (noting that a lack of an explanation as to why a condition fails to satisfy a listing may frustrate meaningful judicial review when the record contains evidence of symptoms that might match some or all of the criteria of a listed impairment and remanding case where the ALJ offered no indication or explanation of how the evidence fell short of Listing 4.02 although there was some indication that plaintiff's condition might satisfy subparagraph B's criteria as the record contained evidence that arguably illustrated the elements of the listing); *Gonzalez v. Comm'r of Soc. Sec.*, No. 1:20-CV-00336, 2021 WL 2808561, *2 & 6 (E.D. Cal. July 6, 2021) (finding it was more appropriate for the ALJ to weigh the evidence and resolve the question where the record was not clear as to whether or not the medical evidence of stress testing meant that plaintiff was unable to perform on an exercise tolerance test at a workload equivalent to 5 METs or less as required by the B criteria of Listing 4.02); *Fulgencio S. v. Berryhill*, No. 8:18-cv-00318, 2018 WL 6248545, *7 (C.D. Cal. Nov. 29, 2018) (declining to make specific factual findings regarding the paragraph B criteria because it is "a responsibility reserved to the Commissioner"); *Wilder v. Saul*, No. 6:20-CV-59, 2021 WL 203196, *6 & 8 (E.D. Ky. Jan. 20, 2021) ("The record contains no specific notation from a medical provider indicating that Wilder could not perform an ETT as described in subpart B(3) of Listing 4.02.  But neither was an exercise test ordered.  And the record indicates consistent physical symptoms that could suggest inability to perform an ETT 'at a workload equivalent to 5 METs or less.'  The ALJ made no findings relative to subpart B, so there is no underlying decision for which the Court could find substantial evidence or a lack thereof. … When the evidence needs to be weighed and evaluated in light of the requirements of the listing, that is 'the ALJ's task and not the Court's.'") (citation omitted); *Martin*, 2021 WL 1235244 at *5 (remanding

18

because plaintiff's "pulse oximetry results were not discussed anywhere in the ALJ's decision, the Court cannot determine whether they were considered or what stead may have been placed on them.  Because it is not the role of this Court to make such determinations, the Court hereby finds that this case should be remanded to the Commissioner for a specific determination of whether Martin's impairments meet or medically equal Listing 3.02C(3)."); *Burrell v. Astrue*, No. 5:11CV1627, 2012 WL 4461524, *7 (N.D. Ohio Sept. 25, 2012) (remanding the case "for redetermination and analysis as to whether Plaintiff's heart conditions meet or equal the Listings" because "[w]ithout more as to whether Plaintiff's  heart condition met or equaled Listing 4.02(A) and (B)(3)(a), the Court cannot ascertain whether substantial evidence supports the ALJ's determination.").

Because this case is being remanded, the court need not decide Plaintiff's additional arguments.  *Washington*, 806 F.3d at 1323 n.10 (explaining that "[b]ecause this case must be remanded for consideration of the new evidence, [the court] need not address" the plaintiff's additional arguments in support of his appeal); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (finding that, where remand was required, it was unnecessary to review other issues raised) (citations omitted); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (finding no need to analyze other issue when the case was reversed due to other dispositive errors); *Arce v. Comm'r of Soc. Sec.*, 2024 WL 36061, *2 (11th Cir. 2024) ("Because remand is necessary, we do not reach Arce's remaining arguments and offer no opinion as to whether the ALJ erred with respect to those issues."); *Pelham v. Astrue*, No. 5:11-CV-01354, 2012 WL 4479287, *9 (N.D. Ala. Sept. 21, 2012) ("Because the first issue on appeal is meritorious, the court does not need to address any further issues."); *Devron M. v. Comm'r, Soc. Sec. Admin.*, No. 2:20-CV-291, 2022 WL 16752083, *4 (N.D. Ga. Aug. 22, 2022);

19

*Dease v. Kijakazi*, No. 2:20-CV-394, 2022 WL 428173, *7 n.5 (M.D. Ala. Feb. 11, 2022) ("Because remand is required, the Court pretermits review of the other issues Plaintiff raised."); *Cantu v. Comm'r of Soc. Sec.*, No. 2:19-CV-832, 2021 WL 960686, *7 (M.D. Fla. Mar. 15, 2021) ("Based on the conclusion above, which warrants remand, the Court need not address the remaining issues Plaintiff raises.").   On remand, the Commissioner should reassess the entire record, providing sufficient reasons and readily identifiable evidentiary support for the decision. *Nichols v. Kijakazi*, No. 2:20-CV-1053, 2023 WL 3138938, *18 (M.D. Ala. Apr. 7, 2023), *report and recommendation adopted*, No. 2:20-CV-1053, 2023 WL 3137973 (M.D. Ala. Apr. 27, 2023) (citing *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (holding that, on remand, the ALJ must reassess the entire record)); *Amerson v. Saul*, No. 8:19-CV-682, 2020 WL 13594933, *5 (M.D. Fla. Sept. 23, 2020).[8]

## V.    Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's construed motion for summary judgment (Doc. 13) is due to be **GRANTED**;

- that the Commissioner's construed motion for summary judgment (Doc. 19) is due to be **DENIED**; and

- that the Commissioner's decision is due to be **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion, including rehearing if necessary.

A separate judgment will issue.

---

[8]  The court emphasizes that, though reversing the Commissioner's decision, no opinion is being expressed regarding Plaintiff's entitlement to disability.  The court holds only that the ALJ's decision demonstrates error requiring reversal and acknowledges that the ALJ potentially could reach the same conclusion after a proper reevaluation.

**DONE** this the 30th day of March 2026.

                                       _____

                                       **CHAD W. BRYAN**
                                       **UNITED STATES MAGISTRATE JUDGE**